DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, the State of Ohio, appeals the judgment of the Lorain County Court of Common Pleas granting Appellee, Jack Hetrick's, motion to suppress. This Court affirms.
 I. {¶ 2} This appeal arises out of joint motions to suppress filed by Appellee, Jack Hetrick ("Hetrick"), and his co-defendant, Ralph Metz ("Metz"). The following is a summary of the facts surrounding the arrests which gave rise to the motions to suppress. Two North Ridgeville Police Officers testified to these facts at the hearing on the motions to suppress. *Page 2 
 {¶ 3} On January 3, 2007, the North Ridgeville Police Department received a phone call from a young woman who, in reliance on information provided to her by her younger sister, stated that she believed that drugs may have been used inside a trailer in Pine Ridge Trailer Park. The police dispatcher communicated the tip to Officer Vince Abt and Lieutenant Mike Freeman. The officers neither attempted to verify this tip by speaking with the caller or her sister nor attempted to obtain a search warrant.
 {¶ 4} In the early evening hours of January 3, 2007, Lt. Freeman and Officer Abt drove to the Pine Ridge Trailer Park to investigate the tip. The officers parked a few trailers away from the trailer at issue. As the officers walked toward the trailer, they noticed Hetrick sitting outside smoking a cigarette. Lt. Freeman testified that he did not notify Hetrick about the nature of the complaint or even that the police had received a call concerning activity at the residence. Officer Abt testified that he and Lt. Freeman advised Hetrick that they were there to investigate a complaint. Lt. Freeman testified that the officers informed Hetrick that they wanted "to step inside and discuss a matter" with him.[1] Hetrick said "`sure'" and opened the door for the officers and the officers followed him inside.
 {¶ 5} Lt. Freeman testified that the officers decided to speak to Hetrick inside the trailer rather than outside the trailer because he was concerned that he *Page 3 
might embarrass Hetrick in front of his neighbors who lived within eight feet or so of Hetrick's trailer. In contrast, Officer Abt testified that he wanted to go inside to speak with Hetrick because "[i]t was January 3rd and it was very cold."
 {¶ 6} When the officers entered the trailer, they encountered Metz, who quickly walked from the living room towards the kitchen. The officers immediately detained Metz, preventing him from entering the kitchen. Metz was ordered to sit down. Lt. Freeman then asked Hetrick and Metz if anyone else was present in the trailer. One of the men responded that Dawn Musat, aka Wagner ("Musat"), was in the bathroom, a few steps from where the officers were standing. Lt. Freeman then approached the bathroom door, which was closed. Lt. Freeman knocked on the door. Lt. Freeman testified that he did not identify himself as a police officer when he knocked on the door. Musat opened the door and exited the bathroom. Lt. Freeman looked inside the bathroom and noticed a white powder on or near the sink, Chore Boy and a folding pocket knife. Because he believed the powder to be crack cocaine, he escorted Musat to the living room and placed her on the floor. All three individuals were then arrested.
 {¶ 7} Lt. Freeman testified that he did not see anything in plain view when he first entered the trailer. The officers testified that they also recovered a glass smoking pipe, a metal push rod and an Altoids tin containing a white substance. The officers later confirmed that the substance in the Altoids tin was crack cocaine. *Page 4 
 {¶ 8} Lt. Freeman testified that Hetrick was "very cooperative" during their interaction and that he did not do anything to make Lt. Freeman fear for his safety. Lt. Freeman stated that he was not aware of any prior complaints of drug use at this trailer and that there had been no prior arrests at this trailer.
 {¶ 9} On March 1, 2007, Hetrick was indicted on one count of possession of a controlled substance, in violation of R.C. 2925.11(A), a felony of the fifth degree, and one count of possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Hetrick and Metz filed joint motions to suppress on May 21, 2007. Hetrick argued that the motions to suppress should be granted for two reasons. First, police officials had no search warrant or any exigent circumstances necessary to enter the residence without a valid search warrant. Second, any statements Hetrick made were involuntary or the product of coercion or duress by the investigating officer.
 {¶ 10} On July 2, 2007, the trial court held a hearing on the motions to suppress. At the end of the hearing, the trial court ordered both parties to submit findings of fact and conclusions of law. On August 10, 2007, the trial court granted Hetrick's motion to suppress. The State has appealed the trial court's ruling, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR *Page 5 "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS."
 {¶ 11} In its sole assignment of error, the State contends that the trial court erred in granting Hetrick's motion to suppress. We disagree.
 {¶ 12} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact.State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416.
 {¶ 13} In its decision granting Hetrick's motion to suppress, the trial court explained that while officers were given consent to enter Hetrick's trailer, the officers exceeded the scope of this consent because "consent to enter and talk or answer some questions is not the same as a general consent to search the entire house." The trial court found that in this case, consent was given only to enter the home and ask questions. According to the trial court, this consent did not transform into a right to roam around the premises checking on the occupants or *Page 6 
conducting a search. The trial court held that the officers violated theFourth Amendment right against unreasonable searches and seizures.
 {¶ 14} After a review of the record, we find that the trial court's factual determinations are supported by competent, credible evidence. The transcript of the suppression hearing supports the trial court's findings of fact. The trial court found that consent to enter was given. The record reflects that both officers testified that they asked Hetrick if they could enter the trailer to talk with him. Hetrick agreed. The trial court further found that there was no testimony that Hetrick consented to any type of search of the premises. The record also supports this finding as neither officer testified that he obtained consent to search the premises. Lastly, the trial court determined that there was no testimony at the hearing that the officers' entrance into the trailer was necessary to protect or preserve life or avoid serious injury and that, therefore, there were no exceptions to the warrant requirement. The testimony at the hearing also supports this finding. Lt. Freeman testified that he did not see any objects in Metz' hands and that neither Hetrick nor Metz made any furtive movements that would indicate any unlawful activity. Accordingly, we turn to the trial court's legal conclusions to conduct a de novo review. SeeRussell, 127 Ohio App.3d at 416.
 {¶ 15} The State contends that the trial court erred when it determined that the Fourth Amendment applied to this matter and suppressed evidence on the basis of a Fourth Amendment violation. It asserts that the Fourth Amendment was *Page 7 
inapplicable to the analysis of the reasonableness of the search because the contact between Hetrick and "law enforcement constituted nothing more than a consensual encounter even though it occurred in [Hetrick's] residence."
 {¶ 16} Hetrick is correct in asserting that the State has waived this argument. A review of the trial court record, including the findings of fact and conclusions of law submitted by the State, reflects that the State failed to raise this argument in the trial court. See Sherlock v.Myers, 9th Dist. No. 22071, 2004-Ohio-5178, at fn. 4 (explaining that a party who fails to raise an issue at the trial court level is deemed to have waived the issue at the appellate level), citing State v. Awan
(1986), 22 Ohio St.3d 120, 123. Accordingly, the State has waived this argument for appeal.
 {¶ 17} The State next asserts that even if the interaction between the officers and Hetrick is not deemed a consensual encounter, the trial court still erred in granting the motion to suppress. The State contends that the officers did not exceed the scope of their consent when searching Hetrick's trailer because Hetrick did not limit his consent. The State points out that officers do not need a warrant, probable cause or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search.
 {¶ 18} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. See Maryland v. Buie (1990),494 U.S. 325, 331. Section 14, *Page 8 
Article I of the Ohio Constitution has nearly identical language to theFourth Amendment and similarly prohibits unreasonable searches and seizures. State v. Kinney (1998), 83 Ohio St.3d 85, 87.
 {¶ 19} For a search or seizure to be reasonable under theFourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies.Katz v. United States (1967), 389 U.S. 347, 357; State v. Brown (1992),63 Ohio St.3d 349, 350 (overruled on other grounds). Probable cause has been defined as "a reasonable ground for belief of guilt." (Quotations and citations omitted.) State v. Moore (2000), 90 Ohio St.3d 47, 49. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." Id., citing State v.Welch (1985), 18 Ohio St.3d 88, 92.
 {¶ 20} "In the absence of a warrant or consent, the entrance of a police officer into a private home is presumptively unreasonable." (Quotations and citations omitted.) Akron v. Price (1999),134 Ohio App.3d 464, 467. If the State failed to obtain a search warrant, it bears the burden of demonstrating that the warrantless search falls within one of the established exceptions. State v. Kessler (1978),53 Ohio St.2d 204, 207, citing State v. Call (1965), 8 Ohio App.2d 277,288. If the search or seizure is deemed unreasonable, the evidence seized must be suppressed. Mapp v. Ohio (1961), 367 U.S. 643, 657. *Page 9 
 {¶ 21} The Ohio Supreme Court has explicitly recognized seven exceptions to the warrant requirement for a reasonable search. Those exceptions are:
 "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; * * * (f) the plain view doctrine[;] or (g) an administrative search[.]" (Quotations and citations omitted.) Price, 134 Ohio App.3d at 467.
 {¶ 22} The officers entered Hetrick's home without a warrant. It is not represented or argued that the entrance was for the purpose of making an arrest, but it is unquestioned that the officers did not have probable cause for making an arrest at the time of entering Hetrick's residence. See Lakewood v. Smith (1965), 1 Ohio St.2d 128. The entrance was justified only by Hetrick's consent to the officers to enter into the trailer to talk with him about an issue. While the officers provided conflicting reasons for wanting to enter Hetrick's home to talk with him, they both clearly stated that they asked for his permission to enter his home solely to speak with him.
 {¶ 23} Under Ohio law, "the state must show by `clear and positive' evidence that the consent was `freely and voluntarily' given based on the totality of the circumstances." State v. Cooper, 9th Dist. No. 21494, 2003-Ohio-5161, at ¶ 12, quoting State v. Posey (1988),40 Ohio St.3d 420, 427. "Clear and positive" evidence is equivalent to clear and convincing evidence. Cooper, supra, at ¶ 12, citing State v.Danby (1983), 11 Ohio App.3d 38, 41. Consent to enter premises does not also extend to consent to search the premises. Lakewood, *Page 10 1 Ohio St.2d at 131; Gahanna v. Duty (Nov. 12, 1999), 10th Dist. No. 98AP-1528, at *2. The Ohio Supreme Court has held that "[a] person who admits a police officer to his premises in compliance with the officer's request for an interview does not thereby waive his constitutional immunity from unreasonable searches, nor does he thereby consent to a search of the premises." Lakewood, 1 Ohio St.2d at paragraph one of the syllabus.
 {¶ 24} The scope of the consent Hetrick provided the officers was established by the officers' statements to Hetrick that they sought his permission to enter his home to ask him some questions. The officers exceeded the consent given by Hetrick when Lt. Freeman walked to the bathroom to check on the occupant and thereafter conducted a search. Id. The State has failed to establish by clear and positive evidence that Hetrick gave consent for the officers to search the premises.Cooper, supra, at ¶ 12, quoting Posey, 40 Ohio St.3d at 427.
 {¶ 25} The State has not established or even asserted on appeal that the search was valid under another exception to the warrant requirement. Hetrick concedes that, if the officers had observed evidence of contraband in plain view upon entering the premises by consent, that evidence would be admissible under the plain view exception to warrantless search and seizure. However, there is no dispute that the officers saw no contraband in plain view. Further, there is no evidence of exigent circumstances that would necessitate the officers' warrantless search of the premises and seizure of contraband. *Page 11 
 {¶ 26} Accordingly, we find that the officers' failure to obtain a warrant to search Hetrick's premises and failure to adhere to the limitations of the consent provided by Hetrick invalidated their search and seizure. Accordingly, we find that the trial court properly granted Hetrick's motion to suppress the evidence obtained from Hetrick's trailer.
 {¶ 27} The State's sole assignment of error is overruled.
 III. {¶ 28} The State's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 12 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, J. CONCURS
[1] At some point during the officers' conversation with Hetrick outside the trailer, the officers confirmed that Hetrick resided at the trailer.