DECISION AND JUDGMENT ENTRY
{¶ 1} After pleading no contest to two drug charges, Terrell Hansard appeals the judgment overruling his motion to suppress the crack cocaine police found in his pants following a vehicle stop. Hansard, the passenger in the vehicle, contends the officer had no basis for patting him down because the officer lacked a reasonable suspicion that he possessed a weapon. He also contends that even if the pat down was appropriate, the scope of the search was excessive. Specifically, he argues that the officer was not justified in removing the tennis ball-shaped "large, rocky crunchy substance" he felt in his pants because he knew it was not a weapon. And because the officer admitted he only believed it "might" have been crack cocaine, its identity was not "immediately apparent." *Page 2 
 {¶ 2} We reject his contention that the pat down was unconstitutional. Based upon a tip from a confidential source, the officers had a reasonable, articulable suspicion that Hansard was engaged in trafficking crack cocaine. Because guns often accompany illegal drugs, the officer was justified in patting down Hansard for weapons.
 {¶ 3} However, the issue of whether the officer exceeded the bounds of a lawful Terry frisk in removing the crack cocaine from inside Hansard's pants presents a much closer question. The officer unequivocally testified that its shape was not consistent with a weapon; thus,Terry's concern for the officer's safety cannot be the basis for the seizure. However, based on the information the police received from an informant and their corroboration of much of that information, we believe the State met its burden of showing that the officer's warrantless seizure of the crack cocaine was justified under the "plain feel" doctrine. The evidence demonstrates that the identity of the object in Hansard's pants would have been "immediately apparent" to an ordinary prudent officer. Therefore, we affirm the trial court's judgment overruling Hansard's motion to suppress.
 {¶ 4} Hansard also contends that the trial court erred when it sentenced him to separate prison terms for his convictions for trafficking in drugs and possession of drugs because the crimes are allied offenses of similar import that should have been merged. Based upon the Supreme Court of Ohio's recent decision in State v.Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, we agree. Because trafficking in crack cocaine under R.C. 2925.03(A)(2) and possession of that same crack cocaine under R.C. 2925.11(A) are allied offenses of similar import and because Hansard trafficked and possessed the crack cocaine with a single animus, i.e. to sell it, he cannot be *Page 3 
convicted of both offenses. Therefore, we sustain Hansard's second assignment of error.
 I. Statement of the Facts {¶ 5} Hansard was indicted on one count of trafficking in drugs, in violation of R.C. 2925.03(A)(2) and one count of possession of drugs, in violation of R.C. 2925.11(A), both felonies of the first degree. After he pled not guilty, he filed a motion to suppress the crack cocaine, arguing that it was obtained following an unlawful traffic stop and an unjustified and excessive pat down search.
 {¶ 6} At the motion hearing, Steve Timberlake, a narcotics investigator with the Portsmouth Police Department, testified that on March 13, 2007, at approximately 2:00 p.m., a confidential informant called to inform him that a shipment of crack cocaine would be coming into Portsmouth that evening. Investigator Timberlake testified that he had used this informant "two or three times" in the past and as a result of the informant's prior tips, "[a]rrests were made, drugs were recovered." The informant told him a white female would be leaving Portsmouth a short time later to pick up a black male, known as "T," in Columbus, and they would be coming into Portsmouth on US 23 later that evening in a gray Dodge Intrepid with damage to the passenger side rear bumper. Investigator Timberlake knew Elaine Harris, whom he had dealt with in other drug investigations, drove a car matching that description.
 {¶ 7} Later that evening, Investigator Timberlake and his partner drove to Lucasville, located 10 miles north of Portsmouth on US 23, and set up surveillance. After some time, they observed a gray Dodge Intrepid with damage to the passenger side rear bumper traveling south on US 23. Investigator Timberlake testified that the *Page 4 
driver of the vehicle was a white female, who he recognized as Ms. Harris, and a black male was on the passenger side. As they followed the vehicle into Portsmouth, Investigator Timberlake notified Officer Josh Justice that the vehicle had entered the city.
 {¶ 8} Officer Justice testified that he observed the vehicle and recognized the driver as Ms. Harris. He followed the vehicle and through LEADS discovered that she was under a driving suspension. Officer Justice testified that Investigator Timberlake then directed him to stop the vehicle, which he did. Investigator Timberlake testified that he considered the stop to be "an investigative stop slash driving under suspension."
 {¶ 9} Investigator Timberlake testified that both occupants were removed from the vehicle and "patted down for officers' safety, for weapons." During the pat down of the passenger, later identified as Hansard, Investigator Timberlake felt a "large, rocky crunchy substance," approximately the size of a tennis ball, on the inside of Hansard's thigh. He raised Hansard's shirt and discovered what appeared to be a white sock tied to his belt loop. Investigator Timberlake testified that he "untied it, pulled it and it removed that lump or tennis ball size lump from inside the thigh." Inside the sock "was what appeared to be a large amount of crack cocaine individually packaged inside a large plastic bag." Subsequent testing determined the substance was over 84 grams of crack cocaine.
 {¶ 10} On cross-examination, Investigator Timberlake testified:
Q. And are you the individual I believe that you testified that you pulled Mr. Hansard out of the car, had him get out?
A. Yes sir.
 Q. And did you perform a pat down search of him? *Page 5 
A. Yes sir.
Q. And in that pat down search I think you said you felt a rocky object around his thigh, is that right?
A. Correct.
Q. Now at the very moment that you touched that did you know what it was? Was it immediately apparent to you?
A. No, it was, it felt like it might have been crack cocaine, but I didn't know for a fact.
Q. It might have been?
A. Yes sir.
Q. And in fact when did you finally discover that it was crack cocaine?
A. After I removed it from the sock that it was packaged in.
Q. And the sock is inside his pants, is that right?
A. Partially inside his pants. Like I said, the end of it was tied to his belt loop.
Q. So you had to pull the sock out of his pants and look inside the sock to finally figure out what it was?
A. Correct.
On re-direct, Investigator Timberlake testified:
Q. He had [sic] hard object on his right thigh?
A. Yes sir.
Q. Okay, and is that consistent with a weapon?
A. No sir, it was not.
 {¶ 11} Following the hearing, the trial court issued its findings of fact and conclusions of law. In denying the motion, the trial court found that the identity of the substance found in Hansard's pant was "felt by the officer to be rocks of crack cocaine" and concluded that "Ohio law allows an officer to obtain what he readily believes to be *Page 6 
contraband as a result of a `pat down' search for weapons." After Hansard pled no contest to the charges in the indictment, the court sentenced him to eight years on the trafficking in crack cocaine charge and seven years on the possession of crack cocaine charge and ordered that both counts run consecutively. Hansard now appeals.
 II. Assignments of Error {¶ 12} Hansard presents two assignments of error:
I. The trial court erred in denying Appellant's motion to suppress evidence gained in violation of his Constitutional Rights.
II. The trial court erred in sentencing Appellant on trafficking in drugs and possession of drugs when the offenses are allied offenses of similar import.
 III. Motion to Suppress A. Standard of Review {¶ 13} When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. In a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, citing State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 765. Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583; Dunlap, supra. Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the *Page 7 
facts of the case. Roberts, supra, at ¶ 100, citing State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.
 B. Vehicle Stop {¶ 14} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., United States v. Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744,750, 151 L.Ed.2d 740; Terry v. Ohio (1968), 392 U.S. 1, 9,88 S.Ct. 1868, 20 L.Ed.2d 889. Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically and well-delineated exceptions. Katz v. United States
(1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. SeeMaumee v. Weisner, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507;Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 15} Traffic stops are seizures within the protection of theFourth Amendment. Terry, supra. A traffic stop is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States (1996), 517 U.S. 806, 809,116 S.Ct. 1769, 135 L.Ed.2d 89; see, also, Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091. In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer may not stop the vehicle unless the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity, including a *Page 8 
traffic violation, has occurred or is imminent. Terry, supra, at 21;State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271;Erickson, supra, at 11-12; State v. Venham (1994), 96 Ohio App.3d 649,654, 645 N.E.2d 831.
 {¶ 16} Hansard bases his contention that the pat down was improper on the argument that the officers stopped the vehicle solely for a traffic violation. He argues the trial court made no express finding concerning the basis for the stop, and the evidence only supports the finding that the basis for the stop was the traffic violation. In so doing, he completely ignores the evidence concerning the confidential informant's tip, the officers' surveillance, and the officers' observation of the vehicle described by the confidential informant on the evening specified by the informant, on the route specified by the informant, and with occupants matching the informant's description. While Officer Justice later observed a possible traffic violation, which gave the officers a basis to conduct a traffic stop, the evidence also shows the officers were justified in investigating their reasonable suspicions of drug activity. The record refutes Hansard's contention that his detention and pat down were based solely on a traffic violation.
 {¶ 17} On the other hand, the State contends the search was justified because the officers had probable cause to arrest Hansard based on the confidential informant's tip and their corroboration of much of the information contained in the tip. Essentially, the State argues that having probable cause to stop and arrest Hansard, they could search him incident to his arrest. However, our review of the hearing on the motion to suppress indicates the State failed to raise this issue there. Thus, we will not consider it here for the first time as the State has forfeited its right to rely upon it. See State v. Ralston, Ross App. No. 06CA2898, 2007-Ohio-177, at ¶ 18, citing State v. Shindler *Page 9 
(1994), 70 Ohio St.3d 54, 636 N.E.2d 319, and Xenia, supra. See, also,State v. Hetrick, Lorain App. No. 07CA009231, 2008-Ohio-1455, ¶ 16. Likewise, the State relied upon the "automobile exception" at the hearing, but does not raise that issue on appeal. Thus, we will not consider it either.
 {¶ 18} Clearly, Officer Justice had probable cause to stop the Harris vehicle for driving under suspension based on the LEADS report that she had no license. See Whren, supra, and Erickson, supra. Normally, the scope of a stop for a traffic violation is limited to those things necessary to accomplish the task of issuing a citation, a warning, or allowing the motorist to go on her way. See State v. Rose, Highland App. No. 06CA5, 2006-Ohio-5292, at ¶ 17, citing State v. Carlson (1995),102 Ohio App.3d 585, 598, 657 N.E.2d 591. The stop cannot be used to create the opportunity for a "fishing expedition." State v. Gonyou (1995),108 Ohio App.3d 369, 372, 670 N.E.2d 1040. However, in this instance, the officers also possessed the basis for a Terry stop. After stopping the Harris vehicle, the officers had a separate legal basis for further detaining the occupants to investigate whether they were involved in illicit drug activity.
 {¶ 19} The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. These circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. Andrews, supra, at 87-88, citing United States v. Hall
(C.A.D.C.1976), 525 F.2d 857. The standard is an objective one, i.e., "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief, that the action taken was appropriate?" Terry, supra, at *Page 10 
21-22; See, also, State v. Woods (1993), 86 Ohio App.3d 423, 424-425,621 N.E.2d 523, citing Bobo, supra. Moreover, the "touchstone" of aFourth Amendment analysis is the reasonableness of the intrusion. See, e.g., Pennsylvania v. Mimms (1977), 434 U.S. 106, 108-109, 98 S.Ct. 330,54 L.Ed.2d 331.
 {¶ 20} Information received from a known informant may provide officers with the reasonable suspicion necessary to conduct an investigatory stop. Adams v. Williams (1972), 407 U.S. 143,92 S.Ct. 1921, 32 L.Ed.2d 612. A police officer may utilize information received from a known informant like any other clue; however, the informant must be shown to be reliable and credible. See State v. Koueviakoe, Gallia App. No. 04CA11, 2005-Ohio-852, at ¶ 20, citing Adams, 407 U.S. at 147. The testimony of an officer that he has received reliable information from the confidential informant in the past may be sufficient to establish that new information provided by the informant is credible. See Koueviakoe, supra, citing State v. Karr (1975), 44 Ohio St.2d 163,165-166, 339 N.E.2d 641 (citations omitted). The information provided by the informant may also be corroborated by officers on the scene to establish reasonable suspicion. See Whiteley v. Warden, Wyoming StatePenitentiary (1971), 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306;State v. Halczyszak (1986), 25 Ohio St.3d 301, 496 N.E.2d 925. An informant's tip is sufficiently reliable to furnish a basis for an investigative stop where the informant is known to the officer and the "given information was specific as to both the person and the crime."State v. White (1996), 110 Ohio App.3d 347, 352-353, 674 N.E.2d 405.
 {¶ 21} On appeal, Hansard does not challenge the confidential informant's reliability or credibility. While the trial court made no express finding concerning the *Page 11 
confidential informant's credibility, it did find that the confidential informant had supplied information to the officers previously. We conclude there is ample evidence to establish that the confidential informant was credible, and the information the informant provided to Investigator Timberlake was reliable. Investigator Timberlake testified that he received information from a confidential informant that a shipment of crack cocaine would be coming into Portsmouth later that evening. Investigator Timberlake knew the confidential informant and had previously used the informant "two or three times" in other drug cases. Relying on information from the confidential informant in those prior cases, Investigator Timberlake testified that "arrests were made, drugs were recovered."
 {¶ 22} Moreover, after receiving the tip the officers were able to corroborate much of the confidential informant's information during their surveillance. The confidential informant told Investigator Timberlake that a black male known as "T" and a white female would be coming into Portsmouth driving south on U.S. 23 from Columbus in a gray Dodge Intrepid with damage to the passenger side rear bumper. Investigator Timberlake knew that Ms. Harris, a white female whom he had previously dealt with in other drug cases, drove a vehicle that matched that description. The informant also told him that the woman would be leaving Portsmouth in a short while to pick up the black male in Columbus and that they would be returning later that evening. Then, later that evening, after the officers set up surveillance approximately 10 miles north of Portsmouth on US 23, Investigator Timberlake observed a vehicle that matched that description driving south on US 23. He also observed the driver and recognized her as Ms. Harris; he also observed that the passenger was a black male. Then, after the vehicle entered Portsmouth and Officer Justice observed the traffic violation, the officers *Page 12 
conducted a vehicle stop, the purpose of which was "an investigative stop slash driving under suspension."
 {¶ 23} Based on the totality of the circumstances, we believe the evidence shows that the officers had a reasonable, articulable suspicion that Hansard was engaged in trafficking in crack cocaine. Thus, we believe Hansard's continued detention was justified underTerry.
 C. Terry Pat Down Search {¶ 24} Initially, Hansard contends that the trial court failed to apply the correct law concerning the propriety of the pat down because it "implicitly found" that the search was "automatic" under the officer's right to remove him from the vehicle stopped solely for a traffic violation. However, we have already concluded there was a legally justifiable basis for the continued and expanded investigatory detention. Thus, his contention that the trial court erred in its "implicit" conclusion of law does not properly frame the issue. Because we determined that the officers had a reasonable suspicion to believe that Hansard was engaged in trafficking in crack cocaine, i.e., to detain him, we must now determine whether the officers were justified in conducting the pat down search.
 {¶ 25} After lawfully detaining an individual under Terry, an officer may frisk the suspect if the officer has reasonable grounds to believe the suspect is armed. Terry, supra, at 25-26. However, the officer "may search only for weapons when conducting a pat down of the suspect."State v. Evans (1993), 67 Ohio St.3d 405, 414, 618 N.E.2d 162. The scope of a Terry search is: "a narrowly drawn authority to permit a reasonable search for weapons for the protection of a police officer, where he has reason to believe *Page 13 
that he is dealing with an armed and dangerous individual * * * ."Terry, supra, at 27. The purpose of a Terry "`search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence.'" Evans, supra, at 408, quotingAdams, 407 U.S. at 146. A Terry pat down search is limited in scope to discovering weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime."Evans, supra, at 414. Thus, a Terry search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."Terry, supra, at 29.
 {¶ 26} We have previously recognized that "police officers face an inordinate risk when they approach an automobile during a traffic stop."Jones, supra, at ¶ 33, citing State v. Williams (1994),94 Ohio App.3d 538, 541 N.E.2d 239. Moreover, Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. Jones, supra, at ¶ 33, citing Evans, supra, at 413. "[T]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." Evans, supra, at 408, citing State v. Williams (1990),51 Ohio St.3d 58, 554 N.E.2d 108 and United States v. Ceballos
(E.D.N.Y.1989), 719 F.Supp. 119, 126 ("The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous.").
 {¶ 27} Investigator Timberlake testified that he conducted a pat down of Hansard for "officers' safety, for weapons." Because Investigator Timberlake reasonably suspected that Hansard was engaged in trafficking in crack cocaine and because *Page 14 
persons who engage in illegal drug activities like drug trafficking are often armed with a weapon, we conclude that Investigator Timberlake was justified in conducting a Terry frisk of Hansard for weapons.
 {¶ 28} Hansard also contends that even if the pat down was appropriate the scope of the pat down was excessive. First, he argues that Investigator Timberlake was not permitted to remove the crack cocaine from the sock tucked inside his pants based upon Terry's concerns for safety because he knew the object was not a weapon. We agree. "When an officer is conducting a lawful pat-down search for weapons and discovers an object on the suspect's person which the officer, through his or her sense of touch, reasonably believes could be a weapon, the officer may seize the object as long as the search stays within the bounds ofTerry v. Ohio." Evans, supra, at paragraph two of the syllabus. AlthoughTerry does not require that an officer be absolutely convinced that an object he feels is a weapon before grounds exist to remove the object from the suspect, a hunch or inarticulable suspicion that an object is a weapon is not a sufficient basis to uphold a further intrusion into a suspect's clothing. Jones, supra, at ¶ 34, citing State v.Harrington (June 1, 1994), Montgomery App. No. 14146. "When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's `size or density,' that it could be a weapon." Evans, supra, at 415, citing 3 LaFave, Search and Seizure (2 Ed.1987) 521, Section 9.4(c). Here, Investigator Timberlake never attempted to justify the removal of the crack cocaine on the basis that it might have been a weapon, and when asked on re-direct whether the hard object he felt in Hansard's pants was consistent with a weapon, he said "no." Due to the object's size and density, i.e., a *Page 15 
tennis-ball shaped "large, rocky crunchy substance," we find no officer could have reasonably believed it was a weapon.
 {¶ 29} Second, Hansard contends that Investigator Timberlake was not authorized to retrieve the crack cocaine under the "plain feel" doctrine because the identity of the crack cocaine was not "immediately apparent" to the officer, i.e., because he only thought it "might" have been crack cocaine. He contends the trial court's findings that the object found in Hansard's pants felt like "rocks of crack cocaine" and that the identity of the substance was "felt by the officer to be rocks of crack cocaine" were against the manifest weight of the evidence.
 {¶ 30} Although Terry limits the scope of the search to weapons, the discovery of other contraband during a Terry search will not necessarily preclude its admissibility. In Minnesota v. Dickerson (1993),508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334, the United States Supreme Court adopted the "plain feel" doctrine as an extension of the "plain view" doctrine. The Supreme Court stated: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." Id. at 375-376. If the illegal nature of the suspicious object is not immediately apparent, police are not permitted to continue touching, feeling or manipulating the object to identify its nature. Id.
 {¶ 31} In the context of the plain feel exception to the warrant requirement, "immediately apparent" is a term of art — it simply means the officer has probable cause *Page 16 
to associate the object with criminal activity. See State v. Woods
(1996), 113 Ohio App.3d 240, 244, 680 N.E.2d 729, citingHalczyszak, supra, and extending its analysis to the "plain feel" context ("In the context of the plain view exception to the warrant requirement, the requirement that seizability be immediately apparent is satisfied if the officer has probable cause to associate an object with criminal activity. (citations omitted). The standard of probable cause, rather than certainty, applies when the officer concludes that the object he has touched, rather than seen, is probably contraband."); See, also State v. Lee (1998), 126 Ohio App.3d 147, 151, 709 N.E.2d 1217
(holding that under the "plain feel" doctrine, the officer needed only probable cause to associate the object with criminal activity, rather than absolute certainty that it was contraband.); State v. Kursim, Clermont App. No. CA2002-04-034, 2002-Ohio-6880, ¶ 15 ("The `immediately apparent' requirement is satisfied if the officer has probable cause to associate the object with criminal activity, based on the totality of the surrounding circumstances.").
 {¶ 32} Ultimately, whether the nature of the items is "immediately apparent" is a question of fact for the trial court, which is in a much better position than this Court to gauge police credibility. State v.Kennedy (Sept. 30, 1999), Ross App. No. 99CA2472, citing State v.Brandon (1997), 119 Ohio App.3d 594, 596, 695 N.E.2d 1195;Woods, 113 Ohio App.3d at 244.
 {¶ 33} On direct examination, Investigator Timberlake testified that during the pat down he felt a "large, rocky crunchy substance" inside Hansard's pants. He then lifted his shirt, discovered what appeared to be a sock tied to his belt loop, untied and pulled the sock, and then discovered what appeared to be crack cocaine inside the sock. On *Page 17 
cross examination, defense counsel skillfully asked him whether it was "immediately apparent" what the object was "at the very moment that [he] touched it." Investigator Timberlake responded: "No, it was, it felt like it might have been crack cocaine, but I didn't know for a fact." Then defense counsel again attempted to drive the final nail into the coffin by asking him whether it "might" have been crack cocaine; Timberlake responded affirmatively.
 {¶ 34} In support of his argument that this testimony is insufficient to justify a seizure of the crack cocaine under the plain feel doctrine, Hansard relies on State v. Groves, 156 Ohio App.3d 205, 2004-Ohio-662,805 N.E.2d 146. In Groves, the officer felt a hard object in the defendant's sock during a pat down search for weapons. The officer conceded that it was apparent that the bulge was not a weapon and stated that he "suspected" that the object was crack cocaine, but did not claim he had probable cause to believe that the object was crack cocaine. The court concluded that the officer's use of the word "suspected" indicated that his conclusion that the hard object in the defendant's sock might be crack cocaine was merely a suspicion, rather than probable cause to believe, that the hard object was crack cocaine. Groves, supra, at ¶ 43. Applying this rationale to the present case, Hansard focuses on Investigator Timberlake's testimony that he believed the object "might" have been crack cocaine "but I didn't know for a fact" to conclude that it was not immediately apparent. However, as we have previously indicated, an officer only needs probable cause to associate the object with criminal activity, not absolute certainty to satisfy the "immediately apparent" requirement under the "plain feel" doctrine. SeeWoods, supra and Lee, supra. *Page 18 
 {¶ 35} The existence of probable cause involves a legal conclusion that receives de novo review. State v. Barnes, Athens App. No. 02CA28, 2003-Ohio-984 at ¶ 8. Probable cause is a fluid concept, turning on the assessment of probabilities, not readily reduced to a neat set of legal rules. State v. Young (2001), 146 Ohio App.3d 245, 254, 2001-Ohio-4284,765 N.E.2d 938, citing Illinois v. Gates (1983), 462 U.S. 213, 232,103 S.Ct. 2317, 76 L.Ed.2d 527. In dealing with these probabilities, "[they] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States (1949) 338 U.S. 160, 175,69 S.Ct. 1302, 93 L.Ed. 1879. Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence. Young, supra, at 254, citing State v. George (1989), 45 Ohio St.3d 325, 329,544 N.E.2d 640; and Gates, supra, at 235; See, also, State v. Gilbert, Scioto App. No. 06CA3055, 2007-Ohio-2717, at ¶ 14. The standard for probable cause requires only a showing that a probability of criminal activity exists — not a prima facie showing of criminal activity. George, supra, at 329. Thus, probable cause for a search is present when the totality of the circumstances make it "fairly probable" that particularly described evidence of a crime will be found. State v. Miller, Washington App. No. 06CA57, 2007-Ohio-6909, at ¶ 15, citing Gates, supra, at 238; See, alsoGeorge, supra, at 329. "Probable cause" exists when an officer has a reasonable ground of suspicion that is sufficiently strong to warrant a prudent person in believing that the place to be searched contains evidence of a crime. See State v. Williams, Trumbull App. No. 2003-T-0071, 2004-Ohio-6337, at ¶ 16. In determining whether probable cause exists, courts look to the totality of the facts and circumstances, *Page 19 
including a police officer's specialized knowledge. State v. Jones, Washington App. No. 03CA61, 2004-Ohio-7280, at ¶ 40, andHalczyszak, supra, at paragraph four of the syllabus.
 {¶ 36} Moreover, we demand the existence of probable cause to be determined ultimately by a judicial officer, not by the very people caught up "in the often competitive enterprise of ferreting out crime." Katz, Ohio Arrest, Search and Seizure, (2007 Ed.), 46-47, § 2.8, quotingJohnson v. United States (1948), 333 U.S. 10, 14, 68 S.Ct. 367,92 L.Ed 436. Thus, we make a probable cause determination under an objective standard, not a subjective one. State v. McDonald, Washington App. No. 04CA7, 2004-Ohio-5395, at ¶ 25. Accordingly, we apply a reasonable prudent officer standard to determine whether the totality of the circumstances make it fairly probable that the object is contraband. And because probable cause is measured under an objective standard, an officer's subjective belief that he has probable cause is immaterial. See McDonald, supra, at ¶¶ 25-31. Rather, courts must evaluate the facts against an objective standard to determine: "would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief that the action taken was appropriate?". Terry, supra, at 21-22, citing Carroll v.United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (citations omitted). However, the converse is also true: "once the objective test for probable cause has been satisfied, it makes no difference that the arresting officer may have held a subjective belief that the known facts and information did not constitute probable cause." McDonald, supra, at ¶ 28. In other words, a court is not bound by an officer's subjective conclusions concerning the *Page 20 
existence of probable cause and may determine that an officer possessed probable cause even if the officer did not believe that the probable cause standard had been satisfied. Id.; See, also, Florida v. Royer
(1982), 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (where an officer testified at the suppression hearing that there was no probable cause, the Court concluded that "the fact that the officers did not believe there was probable cause and proceeded on a consensual orTerry-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause."). Likewise, the officer's subjective view that probable cause exists is not binding on a reviewing court.
 {¶ 37} Here, when asked whether the object's identity was "immediately apparent," Investigator Timberlake responded "No, it was, it felt like it might have been crack cocaine, but I didn't know for a fact." Again, Investigator Timberlake was not required to be absolutely convinced that the object was crack cocaine; he merely had to believe that it was probably crack cocaine. And to the extent that his testimony suggests his subjective belief that he lacked probable cause to associate the object with criminal activity, it does not preclude a court from making a contrary conclusion. Rather, we must view the facts against an objective standard to determine whether a reasonably prudent officer upon feeling the object would have concluded that it's identity was "immediately apparent," i.e., that it was probably crack cocaine. Based on the totality of the circumstances, we conclude that a reasonably prudent officer would believe the object probably was crack cocaine and would be justified in removing the object under the "plain feel" doctrine. *Page 21 
 {¶ 38} First, as we previously discussed, Investigator Timberlake received a reliable tip from a known confidential informant, who had provided credible information in previous drug cases, that a shipment of crack cocaine was being delivered to Portsmouth later that evening. The informant gave fairly detailed information concerning the description of the suspects, the vehicle, the route, and the approximate time of arrival. Specifically, the informant told Investigator Timberlake that a white woman would be leaving Portsmouth in a short while to pick up a black male, known as "T," in Columbus and that later that evening they would be coming into Portsmouth driving south on U.S. 23 from Columbus in a gray Dodge Intrepid with damage to the passenger side rear bumper.
 {¶ 39} Second, the officers were able to independently corroborate much of the informant's information. Investigator Timberlake knew that Ms. Harris, a white female whom he had previously dealt with in other drug cases, drove a vehicle that matched that description. Then, after the officers set up surveillance just north of Portsmouth on US 23, Investigator Timberlake observed a vehicle that matched that description driving south on US 23. He also observed the driver and recognized her as Ms. Harris and observed the passenger, who was a black male. The officers then followed the vehicle south on US 23 as it entered Portsmouth.
 {¶ 40} Third, after the officers conducted a lawful traffic stop of the vehicle, the officers continued to detain the vehicle based on their reasonable, articulable suspicion that Hansard was engaged in trafficking drugs — specifically crack cocaine. As Investigator Timberlake conducted a pat-down search for weapons justified by a reasonable suspicion that Hansard may be armed with a weapon, he felt a "large, rocky *Page 22 
crunchy substance" tucked inside the groin area of Hansard's pants; the object was the size of a tennis ball. Given the object's size, shape, density, "rocky crunchy" characteristics, its location in Hansard's pants, and all of the information known to Investigator Timberlake at the time he felt the object, i.e., the known informant's reliable tip and the officers' independent corroboration of the information, we believe a reasonable officer upon feeling the object would have concluded that he had probable cause under the circumstances to associate the object with criminal activity, i.e., that a reasonably prudent officer would have believed that the object was probably crack cocaine. Thus, we conclude that based on the totality of the circumstances, the "plain feel" doctrine justified Investigator Timberlake's removal of the object from Hansard's pants.
 {¶ 41} Furthermore, we reject Hansard's contention that the trial court's findings that the object found in Hansard's pants felt like "rocks of crack cocaine" and that its identity was "felt by the officer to be rocks of crack cocaine" were against the manifest weight of the evidence. Because the law only requires probable cause and not certainty, and because the state has clearly satisfied that standard, any factual finding that is phrased in terms of certainty is harmless error beyond a reasonable doubt. Therefore, we overrule Hansard's first assignment of error.
 IV. Allied Offenses of Similar Import {¶ 42} In his second assignment of error, Hansard contends that the trial court erred in sentencing him both on his conviction for trafficking in crack cocaine, in violation of R.C. 2925.03(A)(2), and possession of crack cocaine, in violation of R.C. 2925.11(A), because the offenses are allied offenses of similar import. Based upon the *Page 23 
Supreme Court of Ohio's recent decision in State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, we agree.
 {¶ 43} R.C. 2941.25, Ohio's multi-count statute, provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 44} In State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, the Ohio Supreme Court established the analysis for determining whether R.C.2941.25 prohibits separate punishment for two offenses. The first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id. at 636, quoting State v. Jones (1997), 78 Ohio St.3d 12,13, 676 N.E.2d 80. If not, the court's inquiry ends. The crimes are considered offenses of dissimilar import and the defendant may be convicted (i.e., found guilty and punished) for both. Rance at 636, citing R.C. 2941.25(B). If the elements do correspond in the manner described, the court must proceed to a second step. The defendant's conduct is reviewed to determine if the crimes were committed separately or with a separate animus for each crime; if so, the defendant may be convicted of both. See Jones, 78 Ohio St.3d at 14. *Page 24 
 {¶ 45} In Cabrales, the Court rejected a "strict textual comparison" of the elements in considering whether trafficking in a controlled substance under R.C. 2925.03(A)(2) and possessing a controlled substance under R.C. 2925.11(A) are allied offenses of similar import. Applying the two-step analysis set forth Ranee, the Court first compared the elements of the offenses:
 To be guilty of possession under R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance." To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must "hav[e] control over" it. R.C. 2925.01(K) (defining "possession").
 {¶ 46} Comparing these elements, the Court concluded that "trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import, because the commission of the first offensenecessarily results in commission of the second." Id. at ¶ 30. Proceeding to the second step, the Court concluded that under the facts of the case, both offenses were committed with the same animus under R.C. 2941.25(B), i.e., to sell the drugs. Id. at ¶ 31. Therefore, the Court concluded that Cabrales could not be convicted of both offenses.
 {¶ 47} Hansard was convicted of trafficking in crack cocaine under R.C. 2925.03(A)(2) and possession of that same crack cocaine under R.C.2925.11 (A). Therefore, the offenses are allied offense of similar import. There is no evidence they were committed separately. And because both offenses were committed with the same *Page 25 
animus, i.e., to sell the crack cocaine, the offenses must merge. Accordingly, we sustain Hansard's second assignment of error.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 26 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, J.: Concurs in Judgment and Opinion. Kline, J.: Concurs in Judgment Only. *Page 1