The STATE of Ohio, Appellee,

v.

GROVES, Appellant.

[Cite as *State v. Groves,* 156 Ohio App.3d 205, 2004-Ohio-662.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19951.

Decided Feb. 13, 2004.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Elizabeth C. Scott, Assistant Prosecuting Attorney, Appellate Division, for appellee.

Arvin S. Miller, Montgomery County Assistant Public Defender, for appellant.

FAIN, Presiding Judge.

{¶ 1} Defendant-appellant Jason D. Groves appeals from his conviction and sentence for possession of crack cocaine, following a no-contest plea. Groves contends that the trial court erred in denying his motion to suppress evidence, because the evidence was seized as a result of an illegal search by the police officer. We conclude that the state failed to meet its burden in establishing that the police officer had probable cause to seize the crack cocaine from Groves's sock during a patdown, because the police officer only "suspected" that the hard object in Groves's sock was crack cocaine. Therefore, we conclude that the trial court erred in overruling Groves's motion to suppress. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 2} On the evening of September 18, 2002, Officer Cromartie and Officer Pasquale were patrolling the area around Parkside Homes, an apartment community that is a part of the Dayton Metropolitan Housing Authority. Officer Cromartie observed a traffic violation when a vehicle made a turn without signaling. The vehicle then pulled into the apartment community and parked.

Officer Cromartie activated his overhead lights and approached the driver of the vehicle. When the driver of the vehicle explained that he did not have his driver's license, he was asked to step out of the vehicle. The driver was then patted down and placed in the police cruiser by Officer Cromartie.

{¶ 3} Officer Pasquale gathered identification information from the remaining two passengers in the vehicle, including Jason Groves. After running the information through the computer, it was discovered that both passengers had a field interview card ("FIC"),[1] indicating drug histories and weapons violations. Officer Cromartie called for assistance, and Officer Eversole responded.

{¶ 4} Officer Cromartie informed Officer Eversole that the passengers had exited the vehicle and that the passengers had FICs indicating drug histories and weapons violations. Officer Eversole approached the passengers and conducted a patdown search of each passenger. Officer Eversole felt a hard object in Groves's sock and then retrieved his flashlight to illuminate the hard object. Officer Eversole then asked Groves what the hard object was, and Groves responded that he did not know. Officer Eversole retrieved the hard object from Groves's sock and discovered a white chunky substance in a plastic cellophane baggy. Officer Eversole placed Groves in handcuffs and in his police cruiser and then tested the substance, which tested positive as a cocaine derivative. Officer Eversole advised Groves of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. While being read his *Miranda* rights, Groves made several incriminating statements.

{¶ 5} Groves was indicted on one count of possession of crack cocaine in an amount less than one gram, in violation of R.C. 2925.11(A). Thereafter, Groves filed a motion to suppress evidence. After a hearing, the trial court overruled Groves's motion to suppress, concluding that the evidence was seized as the result of a lawful search by the police. Groves then entered a plea of no-contest, was found guilty, and was subsequently sentenced to five years of community control sanctions. Groves was also assessed court costs and a supervision fine.

{¶ 6} From his conviction and sentence, Groves appeals.

## II

{¶ 7} Groves's sole assignment of error is as follows:

{¶ 8} "The trial court erred by overruling Mr. Groves' motion to suppress the evidence recovered as a result of the police illegally seizing and searching him."

---

1. An FIC is a notation made by a police officer and placed in their computer system, which indicates a prior "run in" with the police, including being stopped by an officer in a high drug area, being discovered with a weapon, or being arrested.

{¶ 9} Groves contends that the trial court erred in overruling his motion to suppress, because the evidence seized by the police officer was the result of an illegal search. Groves contends that Officer John W. Eversole did not have probable cause to seize the crack cocaine from Groves's sock during his patdown.

{¶ 10} The state argues that Officer Eversole conducted a lawful search and seizure of the crack cocaine pursuant to the "plain feel" exception to the warrant requirement of the Fourth Amendment. The state also argues that Officer Eversole did have probable cause to seize the crack cocaine from Groves's sock based on Officer Eversole's training and experience, the reputation of the area, and Groves's FIC indicating a drug history and weapons violations.

{¶ 11} In *State v. Lander* (Jan. 21, 2000), Montgomery App. No. 17898, 2000 WL 43708, at * 4, we stated as follows:

{¶ 12} "For purposes of analysis, therefore, we will assume that an object coming within a police officer's plain feel during a proper pat-down frisk for weapons may be seized if the officer has probable cause to believe that the item is contraband before seizing it. In the case before us, Officer House testified that he could feel a small, hard object in the lower corner of Lander's coat pocket when he was patting it down for weapons. In order to reach a conclusion that this object was a piece of crack cocaine, the State necessarily relies upon Officer House's training and experience with respect to crack cocaine, which appears to have been extensive. Significantly, Officer House made no claim that he had probable cause to believe that the object was crack cocaine. On each of the two occasions when he covered this point in his testimony, he used the word 'suspected' to describe his conclusion, clearly indicating that his conclusion that the object might be crack cocaine was merely a suspicion, rather than probable cause to believe, that the object was crack cocaine.

{¶ 13} "Perhaps, if Officer House had been asked whether he had concluded that the object was more likely than not crack cocaine, he would have responded in the affirmative. He was never asked that question. Because this was a warrantless seizure, the State had the burden of proof on this issue, and the State failed to establish that Officer House had probable cause to believe that the object he felt was crack cocaine when he removed it from her coat pocket."

{¶ 14} We reach the same conclusion in the case before us. At the hearing, Officer Eversole testified as follows:

{¶ 15} "Q. Now, as a result of doing a pat down search for your safety on defendant Jason Groves, can you tell us what, if anything, you determined?

{¶ 16} "A. Yes, I can. Um, after my contact with Mr. Rembers, with meeting negative results with him, Mr. Groves was still proned out [sic] actually on the trash can facing away from me. I worked my way from the top to the bottom,

and as I approached his left ankle area, as I was bringing my hands down like this (indicating) across the left ankle area, I noted that he, um, had his— he was wearing gray sweat pants, and they were pulled up above his calf area, and he was wearing white tubular-type socks.

{¶ 17} "Um, as I brought my—hand down, particularly my right hand, I brushed across a, um, a hard object. Um, I, um, I—after I felt the object, I retrieved my flashlight, which I carry on my duty belt, and shined it on there just to get a better illumination of it to see what I was actually looking at, and I could see a—an object protruding from the sock, um, to the right side of his—right side of his body.

{¶ 18} "I asked Mr. Groves what that was, and he indicated to me that he didn't know. I, uh, I suspected it to be crack cocaine. I have had prior dealings with crack cocaine being hid in socks as well as shoes. Um, based on that, this object was retrieved by me, and I did note it to be a white chunky substance.

{¶ 19} "* * *

{¶ 20} "Q. Okay. And, um, you took the item out of the sock; is that correct?

{¶ 21} "A. That is correct."

{¶ 22} On cross-examination, Officer Eversole also testified as follows:

{¶ 23} "Q. And you said as you got towards the bottom, you made a movement like this (indicating). You said you felt something down at the bottom?

{¶ 24} "A. That's correct.

{¶ 25} "Q. Fair to say it was a small bulge?

{¶ 26} "A. It was noticeable enough—it wasn't the largest of bulges, but it was noticeable enough that it was jagged in nature, and I felt it plainly as I was coming down his leg.

{¶ 27} "Q. Okay. About—approximately how much, either based on your investigation or afterwards, how much crack cocaine was there?

{¶ 28} "A. I believe the—the weight we had weighed it at was point eight five grams.

{¶ 29} "Q. Less than a gram?

{¶ 30} "A. That is correct.

{¶ 31} "Q. Size-wise, what would that look like—the size of a pea or—

{¶ 32} "A. Um, a pea would be—it was—it would be small.

{¶ 33} "* * *

{¶ 34} "Q. Would it be fair to say that it was apparent that that was not a weapon of any kind?

{¶ 35} "A. That is correct.

{¶ 36} "Q. And you said to get a better idea of what it may be, you pulled out your flashlight and illuminated that area?

{¶ 37} "A. That is correct.

{¶ 38} "Q. And then after that, to further try to figure out what it was, you asked Mr. Groves what it was?

{¶ 39} "A. I did.

{¶ 40} "Q. And he said he did not know?

{¶ 41} "A. That is correct."

{¶ 42} Officer Eversole conceded that it was apparent to him that the hard object in Groves's sock was not a weapon. However, "a police officer conducting a pat-down frisk for weapons is permitted to retrieve any contraband that he feels during the course of the frisk, so long as its nature as contraband is immediately apparent through the officer's sense of touch." *State v. Lander* (Jan. 21, 2000), Montgomery App. No. 17898, 2000 WL 43708, at * 4, citing *Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. "Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against successfully speculative seizures." Id., citing *Dickerson,* 508 U.S. at 376, 113 S.Ct. 2130, 124 L.Ed.2d 334.

{¶ 43} Officer Eversole clearly stated that he "suspected" that the hard object was crack cocaine. Significantly, as in *Lander,* supra, Officer Eversole did not claim that he had probable cause to believe that the hard object in Groves's sock was crack cocaine. Officer Eversole's use of the word "suspected" indicates that Officer Eversole's conclusion that the hard object in Groves's sock might be crack cocaine was merely a suspicion, rather than probable cause to believe, that the hard object was crack cocaine.

{¶ 44} Perhaps if Officer Eversole had been asked whether he had concluded that the hard object was more likely than not crack cocaine, he would have responded in the affirmative. Officer Eversole was never asked that question. Because this was a warrantless seizure, the state had the burden of proof on this issue. We conclude that the state failed to establish that Officer Eversole had probable cause to believe that the hard object he felt was crack cocaine when he removed it from Groves's sock. As a result of our conclusion, we need not reach the other arguments raised by Groves. Although the state argues that Officer Eversole was authorized to seize the crack cocaine because Groves consented to the patdown, the Fourth Amendment still requires that the officer have probable

cause to believe that the object felt during a proper patdown is contraband. See *Lander*, 2000 WL 43708, at * 4, citing *Dickerson*, supra. Groves's consent to a pat-down search for safety did not extend to a consent to have items seized from his person on less than probable cause. We have previously concluded that the state failed to establish that Officer Eversole had probable cause to believe that the hard object he felt was crack cocaine when he removed it from Groves's sock.

{¶ 45} We conclude that the trial court erred in overruling Groves's motion to suppress. Groves's sole assignment of error is sustained.

### III

{¶ 46} Groves's sole assignment of error having been sustained, the judgment of the trial court is reversed. This cause is remanded for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

BROGAN and WOLFF, JJ., concur.