OPINION
{¶ 1} Defendant-appellant Gary Lee Pullen appeals, in two separately numbered appeals, from his conviction and sentence on two separately indicted drug offenses: Possession of Cocaine, a felony of the fifth degree, assigned the trial court case no. 2005 CR 02825, and appellate case no. 22038; and Possession of Crack Cocaine, a felony of the third degree, assigned the trial court case no. 2005 CR 04820, and *Page 2 
appellate case no. 22022. Although these represent two separate appeals, only one set of briefs has been filed, addressing four assignments of error. Accordingly, we are issuing identical opinions in each appellate case, disposing of the four assignments of error Pullen raises.
 {¶ 2} Both convictions resulted from no-contest pleas that were part of a plea bargain involving an agreed, three-year sentence. The pleas to both offenses were entered during Pullen's trial on the third-degree felony offense, which had also involved Pullen's unsuccessful motion to suppress evidence. A motion to suppress evidence was pending in the fifth-degree felony offense case, but was withdrawn as part of the plea bargain.
 {¶ 3} Pullen contends that the trial court erred in overruling his motion to suppress, that the trial court erred in overruling his motion to substitute assigned counsel, that his trial counsel was ineffective, and that the trial court erred in accepting his no-contest pleas, because they were not knowing and voluntary.
 {¶ 4} We conclude that there is evidence in the record to support the trial court's decision to overrule Pullen's motion to suppress; that the trial court did not abuse its discretion in overruling his motion to substitute assigned counsel; and that the record indicates that Pullen's no-contest pleas were knowing and voluntary. Because Pullen pled no contest, he has failed to preserve any claim of ineffective assistance of counsel that neither: (1) was included within the scope of his motion to substitute assigned counsel; nor (2) implicates the knowingness and voluntariness of his no-contest pleas, and we conclude that the record fails to portray that his trial counsel was ineffective in either of those respects. Accordingly, the judgment of the trial court is Affirmed. *Page 3 
 I {¶ 5} In Case No. 22038, the facts were never developed in the record. In Case No. 22022, the record reflects that Pullen was known to Dayton Police Officer David L. House as someone who had sold him — Officer House — unlawful narcotics in the past, and that, House caused uniformed Dayton police officers, in a marked police cruiser, to initiate a traffic stop of the vehicle that Pullen was driving at about 7:50 p.m., in mid-November, 2005.
 {¶ 6} House approached the driver's side, and obtained a driver's license and an insurance card from Pullen, whose hand was shaking. House asked Pullen to step out of the vehicle, and Pullen did so. House noticed Pullen reaching for his right hip as he was getting out of the vehicle. After Pullen got out, House was able to see a plastic baggie containing what appeared to be marijuana lying on the car seat.
 {¶ 7} For his safety, House conducted a weapons pat-down on Pullen. House testified concerning the pat-down as follows:
 {¶ 8} "A. I first started patting down his pockets. As I patted down his left pocket I could feel what I recognized as a wad of folded money. I continued patting him down. I checked the area of Mr. Pullen's buttocks and immediately I felt a very large hard object, which I recognized to be crack cocaine between Mr. Pullen's buttocks. Mr. Pullen even erupted even more [sic] screaming louder stating we were hurting him. He then clinched his buttocks very tightly together and actually crossed his ankles so that we could not recover the crack cocaine. At that point I told Mr. Pullen I said you're under arrest for possession of crack. I said do you want to go to jail for tampering also? You need to let us recover this. Mr. Pullen continued squirming around on the back of *Page 4 
the car screaming and hollering. Also at this point a street supervisor, Sergeant Anthony Quinn, arrived on scene and was actually parked directly behind us and observed this entire incident taking place. Mr. Pullen continued to refuse to open his legs to loosen his buttocks. Detective Emerson came around to the vehicle, was able to unlace Mr. Pullen's ankles so that we could spread his legs apart. Through the outside of Mr. Pullen's pants I worked the large chunk of crack cocaine up to his waistband. I then recovered a plastic, I'm sorry, a rubber glove from Officer Polley and then I reached in and recovered the baggie from inside the upper waistband area of the rear of Mr. Pullen's boxer shorts."
 {¶ 9} On cross-examination, House testified:
 {¶ 10} "Q. OK and you didn't feel any hard objects that lead you to believe he had a weapon, is that correct?
 {¶ 11} "A. What I felt was the hard chunky object, which I recognized as crack cocaine. I did not believe at that point when I felt it that it was a weapon.
 {¶ 12} ". . . .
 {¶ 13} "Q. OK you did rule out weapon even at that point, correct?
 {¶ 14} "A. Yes, when I felt it[,] sir[,] I did not believe it was a weapon. I recognized it as what I believed to be crack cocaine.
 {¶ 15} ". . . .
 {¶ 16} "Q. But Terry versus Ohio, which permits the pat down in the first place detective, I know you're familiar with that, for the protection of the officer to make sure there's no weapons, once you determine there's no weapons obviously later cases have now alleged [sic] to recover and to further the search if you find something in a pat *Page 5 
down that leads to believe evidence of a crime such as narcotics so are you suggesting that when you located by touching the buttocks area and based on your experience you felt it to be evidence of drugs, are you suggesting that you did not further that by doing a search?
 {¶ 17} "A. Again[,] sir[,] I, maybe it's the simply semantics and me and you having a different definition of the search or maybe I don't have the right legal definition of the search, but what I'm stating is that again as you said through further case law of the playing field doctrine [sic, presumably `plain feel'] I feel what I immediately recognized that to be then I have the right to recover it. I didn't have to search any further to look for this item. I had already located the item and I was simply recovering it.
 {¶ 18} ". . . .
 {¶ 19} "Q. In terms of the search or recovery of the drugs in the buttocks area, would you follow the same procedure had you not know[n] Mr. Pullen also the experience with him, would you still follow the same procedure or would you have done something different?
 {¶ 20} "A. No sir, Mr. Pullen was a complete stranger to me and the circumstances ended up that I was patting down this individual and I felt what I believed to be, in this case crack cocaine or any other narcotic in that location I would have done the same thing, which I have done on numerous occasions to recover that item."
 {¶ 21} Pullen moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, Pullen's motion to suppress was overruled. *Page 6 
 {¶ 22} Thirteen days before the scheduled trial date, Pullen filed his own, pro se motion to remove his assigned counsel due to an unspecified "conflict of interest" and due to unspecified "ineffective assistance of counsel." The next day, defense counsel filed a motion to withdraw as counsel, the entire text of which is as follows:
 {¶ 23} "Now comes Alan D. Gabel and hereby moves this Honorable Court to allow him to withdraw as counsel in the above matter for the reason that defense counsel has reviewed and made recommendations to his client to help proceed in this matter but the client refuses to follow the recommendations. Furthermore, counsel has requested from the client a list of defense witnesses to call at the upcoming trial, but client refuses to provide any list to counsel.
 {¶ 24} "Counsel filed a motion to suppress and had two separate hearing[s] on the Motion to Suppress. Counsel cross-examined and called witnesses for his client. On September 14, 2006 the Court issued a decision on the motion to suppress. The Defendant is unhappy with that decision and blames counsel for it.
 {¶ 25} "Counsel has advise[d] his client of the schedule trial to start November 27, 2006. However, in open Court the client said he did not want this counsel to represent him. In addition, the client said he would represent himself. The Court has rejected any attempts to appoint a forth [sic] counsel. The Court advised the client that he can retain a new attorney or represent himself. However, the Court told the client to file a motion to represent himself. The client said he would do so.
 {¶ 26} "It is respectfully requested the Court allow counsel to withdraw in this matter."
 {¶ 27} On the morning of the day set for trial, at 8:20, the trial having been *Page 7 
scheduled to begin at 10:00, the trial court took up the matter of the two motions concerning trial counsel. The colloquy that ensued takes up twenty-five pages of transcript. Most of that colloquy is between the trial judge and Pullen, although, near the end, his trial counsel was invited to, and did, address the court. We note that the trial judge did frequently interrupt Pullen, but this seems to have been because Pullen was having difficulty understanding the scope of the hearing, and that ultimately, if the trial court refused to substitute yet another trial counsel for him, Pullen would have to choose between continuing with his assigned counsel or waiving his right to counsel and proceeding pro se. The record reflects that the trial court did hear out Pullen's complaints against his trial counsel, and also heard Pullen's trial counsel rebut many of those complaints.
 {¶ 28} Eventually, Pullen decided to proceed to trial with his assigned counsel.
 {¶ 29} During the middle of the trial, a plea bargain was arrived at whereby Pullen pled no contest both in case no. 2005 CR 04820, for which he was being tried, and in case no. 2005 CR 02825. The plea bargain included an agreed sentence aggregating three years. The trial court conducted an appropriate plea colloquy, and accepted the no-contest pleas. Pullen was sentenced in accordance with the plea bargain. From his conviction and sentence, Pullen appeals.
 II {¶ 30} Pullen's First Assignment of Error is as follows:
 {¶ 31} "DID THE TRIAL COURT ERR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AS THE EVIDENCE OBTAINED WAS THE RESULT OF AN *Page 8 
ILLEGAL SEARCH?"
 {¶ 32} Pullen contends that House lacked probable cause to retrieve the hard object he found in Pullen's buttocks cheeks, citing State v.Groves, 156 Ohio App.3d 205, 2004-Ohio-662, for the proposition that where a police officer, conducting a pat-down search for weapons, feels an object that he merely "suspects" as being crack cocaine, that does not rise to the level of probable cause.
 {¶ 33} In the case before us, House's conclusion that the object he was feeling was crack cocaine was not a mere suspicion. In his direct examination, he testified that he immediately recognized the object as being crack cocaine. On cross-examination, he testified that he "believed" it to be crack cocaine. "Suspicion" is defined in Webster's Third New International Dictionary, unabridged, as being: "1 a: the act or an instance of suspecting: imagination or apprehension of something wrong or hurtful without proof or on slight evidence . . . 2: INKLING, INTIMATION, HINT. . . ." By contrast, "belief" is defined in the same authority as: "3 a: conviction of the truth of some statement or the reality of some being or phenomenon esp. when based on an examination of the grounds for accepting it as true or real . . . 4: immediate assurance or feeling of the reality of something in sensation."
 {¶ 34} As noted in State v. Groves, supra, at ¶ 12, the authority upon which Pullen relies, in order for a police officer to be able to lawfully retrieve an item coming within his plain feel during a proper pat-down frisk for weapons, the officer must have probable cause tobelieve that the item is contraband. House's testimony that he "believed" the item to be crack cocaine is entirely consistent with his having had probable cause for that belief. *Page 9 
 {¶ 35} The evidence in the record supports the trial court's conclusion that House, based upon his plain feel of the object, "without manipulating, moving or squeezing" it, had an objectively reasonable belief that it was crack cocaine.
 {¶ 36} Pullen's First Assignment of Error is overruled.
 III {¶ 37} Pullen's Second Assignment of Error is as follows:
 {¶ 38} "DID THE TRIAL COURT ABUSE ITS DISCRETION BY OVERRULING BOTH APPELLANT'S AND HIS COUNSEL'S MOTION TO WITHDRAW AS COUNSEL?"
 {¶ 39} Pullen argues that the trial court's decision to deny these motions was arbitrary and unreasonable. We are not persuaded.
 {¶ 40} From the colloquy that the trial court conducted on this issue, it appears that any failure of communication was attributable to Pullen's having failed to provide information that his attorney had requested. Moreover, Pullen's main complaint was his trial counsel's having failed to procure the attendance of the passenger in the vehicle, Nasshon Pettigrew, as a witness at trial. When the plea bargain concluding this case, in the midst of trial, was spread upon the record, Pullen's trial counsel made the following statement:
 {¶ 41} "Just for the record even though it's a mute [sic] point, let the record reflect Mr. Pettigrew did show up as a witness, the witness the court was permitting to testify. I've had an opportunity to meet with him and I was prepared to go forward with him had we gone forward to trial." *Page 10 
 {¶ 42} There are references in the record to Pullen's trial counsel, who Pullen was seeking to replace, having been Pullen's third assigned trial counsel. We have only found one prior appearance noted in the record, which would make this Pullen's second assigned trial counsel. In any event, we find no abuse of discretion in the trial court's having overruled the motions to substitute assigned trial counsel. The record made on this issue reflects that trial counsel, who is an experienced criminal defense lawyer, diligently represented Pullen, vigorously and appropriately prosecuted Pullen's motion to suppress, but was somewhat hampered by Pullen's having failed to provide him with names and addresses of witnesses for trial. Nevertheless, the main witness that Pullen was complaining about, Nasshon Pettigrew, was located, available, and prepared as a witness at the trial.
 {¶ 43} Pullen's Second Assignment of Error is overruled.
 IV {¶ 44} Pullen's Fourth Assignment of Error is as follows:
 {¶ 45} "DID THE TRIAL COURT ERR BY RULING THE APPELLANT'S PLEAS OF NO CONTEST WERE KNOWINGLY AND VOLUNTARILY MADE?"
 {¶ 46} In support of this assignment of error, Pullen argues that his no-contest pleas were accompanied by a protestation of innocence. Where a plea of guilty or no contest is accompanied by a protestation of innocence, the trial court is required to conduct some inquiry to make sure that the defendant's calculation that he will plead despite believing himself innocent is rational. State v. Bowling (March 10, 1987), Montgomery App. No. 9925. *Page 11 
 {¶ 47} We have not found any protestation of innocence in this record. The record reflects a full colloquy, in compliance with Crim. R. 11. There is nothing in the record to indicate that Pullen's decision to plead was other than knowing and voluntary.
 {¶ 48} Pullen's Fourth Assignment of Error is overruled.
 V {¶ 49} Pullen's Third Assignment of Error is as follows:
 {¶ 50} "WAS THE APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE AS GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION VIOLATED BY HIS TRIAL COUNSEL'S REPRESENTATION?"
 {¶ 51} In a felony case, a plea of no contest is a sufficient basis for a finding of guilt. Therefore, errors occurring before the plea is tendered and accepted cannot be deemed to have been prejudicial. Nevertheless, one of the consequences of a plea of no contest is that error in an adverse ruling on a pretrial motion is preserved for appellate review. Crim. R. 12(I). And, of course, ineffective assistance of counsel adversely affecting the voluntariness and knowing nature of the defendant's decision to plead is cognizable on appeal.
 {¶ 52} We have previously determined that the trial court did not err in overruling the motions that Pullen and his trial counsel filed to substitute trial counsel, which were based, at least in part, on a claim of ineffective assistance of counsel. Part III, above. The only other issue of ineffective assistance of trial counsel that would be cognizable in this appeal is ineffective assistance adversely affecting the voluntariness and knowing nature of Pullen's decision to plead no contest to the charges. We find nothing in the *Page 12 
record to reflect that Pullen's decision to plead no contest was rendered other than voluntary and knowing as a result of anything that his trial counsel did, or failed to do.
 {¶ 53} Pullen's Third Assignment of Error is overruled.
 VI {¶ 54} All of Pullen's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, (sitting by assignment of the Chief Justice of the Supreme Court of Ohio)
Copies mailed to:
Mathias H. Heck, Jr.
Mark J. Keller
Pamela L. Pinchot
 Hon. Frances E. McGee *Page 1