The STATE of Ohio, Appellee,

v.

LEVECK, Appellant.

[Cite as *State v. Leveck*, 196 Ohio App.3d 26, 2011-Ohio-1135.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23970.

Decided March 11, 2011.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura M. Woodruff, Assistant Prosecuting Attorney, for appellee.

Slicer Law Office and Charles W. Slicer III, for appellant.

HALL, Judge.

{¶ 1} While on patrol, a police officer ran a license-plate number through his in-cruiser computer and discovered that although the registered owner was a licensed driver, a field-interview card ("FIC") noted that the owner, on occasion, had allowed a particular person to drive the vehicle who did not have a valid driver's license. The physical description in the computer of the owner and the unlicensed person both matched the officer's observation of the current driver. Because the officer could not determine which person was driving, the officer stopped the vehicle to find out. Robert Leveck was a passenger in that vehicle. The driver allowed officers to search the vehicle, and they found drug paraphernalia under and near the front passenger seat in which Leveck had been sitting. Leveck was arrested. Eventually it was discovered that Leveck had a Baggie of heroin hidden on him. The trial court overruled Leveck's motion to suppress the heroin that was found as a result of the stop, ruling that the police officer had a reasonable and articulable suspicion that an unlicensed driver was operating the vehicle. Leveck has appealed.

{¶ 2} We agree that the stop was impermissible. On these facts, the officer's suspicion that the likely driver was unlicensed was not reasonable.

I

{¶ 3} At 4:30 in the afternoon on August 5, 2009, Dayton police officer Ronald Gustwiller was traveling north on Salem Avenue in the general area of Good Samaritan Hospital. He was patrolling the area as part of the Phoenix Project, an initiative designed to address growing criminal activity in an eight-square-block area near the hospital known for its high rate of drug activity. At the intersection of Salem and Philadelphia Avenue, Gustwiller passed a vehicle traveling south bearing license plates that identified the vehicle as being from adjacent Greene County. (Dayton is in Montgomery County.) This aroused

Gustwiller's suspicions. He believed from his experience and training that out-of-county vehicles in that area were often there for illicit reasons. So Gustwiller swung his cruiser around and began to follow. Gustwiller ran the vehicle's license-plate number through his in-cruiser computer. The computer revealed that the vehicle was registered to Michael Burns. The record of both the vehicle and Burns was clean except for an FIC, "a notation made by a police officer and placed in their computer system, which indicates a prior 'run in' with the police." *State v. Groves*, 156 Ohio App.3d 205, 2004-Ohio-662, 805 N.E.2d 146, at ¶ 3, fn. 1. The trial court determined that Burns on occasion allows an unlicensed driver, Justin Pitsick, to drive his vehicle.

{¶ 4} Officer Gustwiller's computer provided him with a physical description of Burns and of Pitsick. The descriptions of the two men were practically the same—e.g., same gender, same race, same size—and matched Gustwiller's observation of the driver of the vehicle in front of him. Officer Gustwiller could not determine whether the vehicle was being driven lawfully by Burns or unlawfully by Pitsick. So Gustwiller decided that he would stop the vehicle to find out. There is nothing in the record to reveal whether the officer had confirmed that Pitsick was still unlicensed.

{¶ 5} The driver identified himself as Michael Burns, but he did not have his license or identification with him to prove this. Gustwiller asked the driver to join him in the cruiser while he tried to determine his identity. While they were in the cruiser, Officer Gustwiller twice asked for permission to search the vehicle, and the driver each time consented. Gustwiller eventually verified that the driver was indeed Michael Burns. Gustwiller and another officer, who had arrived as backup, searched Burns's vehicle. Under the front passenger's seat where Leveck had been sitting, they found two hypodermic needles, and in the front passenger's door they found a bottle of water, both indicative of a heroin user. Since the objects had been found under and near his seat, Leveck was arrested for possessing drug paraphernalia. An on-scene search of Leveck revealed nothing. But at the police station Leveck admitted that he had a Baggie of heroin, which soon fell out of one of his pant legs.

█ {¶ 6} Leveck was ultimately indicted under R.C. 2925.11(A) on one count of possessing less than one gram of heroin. Leveck moved to suppress all the evidence that was obtained as a result of the stop, arguing that the stop had violated the Fourth Amendment.[1] Leveck also moved to suppress statements

---

1. Even though he was only a passenger in the vehicle, Leveck has standing to challenge the stop. See *Brendlin v. California* (2007), 551 U.S. 249, 259, 127 S.Ct. 2400, 168 L.Ed.2d 132 (saying that "a passenger may bring a Fourth Amendment challenge to the legality of a traffic stop").

that he had made to the police after the stop, arguing that they were obtained in violation of *Miranda*. On February 18, 2010, the trial court overruled Leveck's motion to suppress in part and sustained it in part. The court concluded that the initial stop was permissible because, based on the FIC, Officer Gustwiller had a reasonable and articulable suspicion that an unlicensed driver was operating the vehicle, in violation of Ohio law. See R.C. 4510.12 (prohibiting the operation of a motor vehicle without a valid license). But the court agreed that some, though not all, of his statements to police were obtained unlawfully and should be suppressed. On February 19, 2010, Leveck pleaded no contest to the possession charge. The trial court sentenced him to five years of community control.

{¶ 7} Leveck appealed.

## II

{¶ 8} In a single assignment of error,[2] Leveck argues that the trial court erred by overruling his motion to suppress the evidence obtained as a result of the stop. Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶ 9} Leveck contends that Officer Gustwiller did not have a reasonable and articulable suspicion that the driver of the vehicle was unlicensed. We agree.

## A. Investigatory Stops of Vehicles

{¶ 10} The Fourth Amendment to the United States Constitution prohibits searches and seizures that are unreasonable. A police officer who stops a vehicle and detains its occupants "seizes" the occupants within the meaning of the Fourth Amendment. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660. The seizure is reasonable under the Fourth Amendment if the officer has at least a reasonable and articulable suspicion that "criminal activity may be afoot," in other words, that a crime is being committed. *Terry v. Ohio* (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[The] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [seizure]." Id. at 21. Also, "[w]hen determining whether an investigative traffic stop is supported by a reasonable and articulable suspicion of criminal activity, the stop must be viewed in light of the totality of the circumstances surrounding the stop." *State v. Greathouse,* Cuyahoga App. No. 93187, 2010-Ohio-1209, 2010 WL

---

2. "The trial court erred in denying defendant's motion to suppress."

1088212, at ¶ 9, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, at paragraph one of the syllabus.

{¶ 11} If an officer has a reasonable and articulable suspicion that a driver is unlicensed, a stop of the vehicle and the detention of its occupants are justified in order to check the driver's license. *Prouse* at 663. This court said in *Dayton v. Erickson* (Mar. 20, 1995), Montgomery App. No. 14712, 1995 WL 117881, *2, reversed on other grounds, 73 Ohio St.3d 1413, 651 N.E.2d 1310, that "a computer search on a license plate which revealed that the owner did not have a valid operator's license was a sufficient basis to stop the driver of the vehicle *where the police officer also had some additional basis to suspect that the owner was the driver.*" (Emphasis added.) See also *State v. Jasper*, Greene App. No. 2005 CA 98, 2006-Ohio-3197, 2006 WL 1719751, at ¶ 15, citing *Erickson*. Typically, the additional basis is provided by comparing the physical description of the registered owner from the Bureau of Motor Vehicles records with the officer's own observation of the driver. Furthermore, in *Greenville v. Fortkamp* (May 13, 1998), Darke App. No. 97–CA–1449, 1998 WL 310743, this court said that "[b]ecause it is reasonable to infer that the driver of a vehicle *may* be its registered owner, even absent a physical description or other corroboration, an officer who learns that the registered owner of a vehicle lacks driving privileges is permitted to stop a person seen operating it to investigate whether the operator is licensed." (Emphasis sic.) *Id.*; *State v. Simmons* (Mar. 29, 1996), Montgomery App. No. 14845, 1996 WL 139654. This is the view of many Ohio courts. *Greathouse*, 2010-Ohio-1209, 2010 WL 1088212, at ¶ 11 ("Ohio courts have recognized that a police officer who learns that the registered owner of a vehicle lacks driving privileges may reasonably infer that the automobile is being driven by its registered owner"). "Of course," this court continued in *Fortkamp*, "and because a totality of the circumstances standard is involved in determining whether seizure was 'reasonable,' if other information the officer has indicates that the operator whom he sees is not the registered owner, the officer may lack * * * justification." See *State v. Elliott*, Washington App. No. 08CA50, 2009-Ohio-6006, 2009 WL 3791655, at ¶ 17 ("[A]bsent some indication that the registered owner is not driving the automobile, police may conduct an investigatory stop if they learn that the registered owner has a suspended license").

## B. Analysis of the Facts

{¶ 12} Initially, we note that the fact that Officer Gustwiller's patrol was part of the Phoenix Project, the fact that he was patrolling a high-crime area, and the fact that the vehicle was of Greene County registry, in this instance, does not provide support for the stop of the vehicle in which the defendant was a passenger. Driving a vehicle from an adjacent county at 4:30 on a summer

afternoon on a major thoroughfare, without more, is not suspicious. The stop of this vehicle emanated solely from the results of a license-plate check. When Gustwiller was asked at the suppression hearing, "So why did you decide to stop the car," he replied, "Just due to the fact that I came up to the car and was trying to make identifiers, i.e., their weight, their height, their hair color, anything like that. Just try and figure out if this possibly could be Pitsick or Burns." It is clear from Gustwiller's testimony that the stop was not based on drug activity or any other such crimes. (Gustwiller's initial decision to run the plate may have been prompted by a vague suspicion of such activity, but Leveck does not challenge this action, and for good reason: random, suspicionless license-plate checks done on in-cruiser computers do not implicate the Fourth Amendment and are permissible, see *State v. Shelton* (July 29, 1994), Montgomery App. No. 14284, 1994 WL 390162.) Nor did Officer Gustwiller stop the vehicle because of a traffic violation; he testified that he did not see the vehicle violate any traffic laws.

{¶ 13} Officer Gustwiller stopped the vehicle because of the FIC's noting that the vehicle's registered owner, Michael Burns, on occasion had allowed an unlicensed person, Justin Pitsick, to drive the vehicle. Gustwiller explained that the FIC was put in the computer "[b]ecause Mr. Burns allows Pitsick to drive his vehicle and * * * Pitsick is a suspended driver." Gustwiller continued, "That's why the FIC is in there for other crews who happen to run that plate so that way they know hey, this could be Pitsick driving Burns' car so that they could possibly make a stop on the vehicle to properly identify the driver." The record does not contain any information about when, how often, how long ago, where, what time of day or night, or why Pitsick had previously driven the vehicle.

{¶ 14} The critical part of our analysis examines whether Officer Gustwiller could reasonably infer that Pitsick was the driver from facts related from the FIC alone. We conclude that a reasonable inference would be that the likely driver was Burns, the registered owner. See, e.g., *Fortkamp*. Gustwiller thought that he had an additional basis to suspect that Pitsick was the driver because he knew that the driver matched the physical description he had of Pitsick. Were the facts limited to the FIC and Gustwiller's comparison, Gustwiller likely would have had a reasonable and articulable suspicion that a crime was being committed (operating a motor vehicle without a valid license), rendering a stop permissible. See *Erickson*. But Gustwiller likewise knew that the driver also matched the physical description he had of Burns, the registered owner. Now the driver might be the unlicensed Pitsick or he might be the licensed Burns. With two possibilities, the situation here differs from the one in both *Erickson* and *Fortkamp*.

{¶ 15} To justify an investigatory stop, a logical link or reasonable inference is needed that connects the unlicensed person to the driver being observed by the officer.  In *Erickson,* the link was a fact—the match between the description of the registered owner and the driver.  In *Fortkamp,* the link was an inference—" '[i]t is reasonable to assume that the driver of the vehicle is most often the registered owner.' " *Fortkamp,* quoting *State v. Owens* (1991), 75 Ohio App.3d 523, 525, 599 N.E.2d 859.  In the present case, that link is missing. Gustwiller did not point to any particular fact or any particular thing about the circumstances that caused him to suspect that the driver was Pitsick rather than Burns.  While it is possible that Pitsick was the driver, given the absence of facts and the just-quoted inference from *Fortkamp,* the more likely inference is that the driver was Burns.  Therefore, the reasonable inference to draw, and the inference supported by the case law, was that the driver was likely the registered owner.  Because Gustwiller had no reason to suspect Burns of criminal activity, an investigatory stop was unnecessary and unwarranted.

{¶ 16} On these facts, Gustwiller's suspicion was not constitutionally sufficient—not because it was irrational, but because the record does not support a sufficient basis in the facts and the reasonable inferences drawn from those facts. Because the stop was not based on a reasonable and articulable suspicion of criminal activity, it was unlawful.  Therefore, any evidence obtained as a result of the stop must be excluded.

{¶ 17} Finally, although Leveck did not raise the issue, we note that any statements that Leveck made to police as a result of the stop must also be suppressed as "fruit of the poisonous tree."  See *State v. Cooper,* Montgomery App. No. 23719, 2010-Ohio-1120, 2010 WL 1041441, at ¶ 22 (holding that because the vehicle stop was unlawful, evidence and statements obtained as a result must be suppressed for this reason), citing *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.[3]

{¶ 18} The sole assignment of error is sustained.

{¶ 19} The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings consistent with the opinion.

Judgment accordingly.

DONOVAN and FROELICH, JJ., concur.

---

3.  We note that during the pendency of this appeal, the trial court administratively terminated the underlying case, due to Leveck's commitment on a subsequent offense.