[Cite as *State v. Cook*, 2013-Ohio-2014.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25302 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-3546 |
| v. | : | |
| | : | |
| ROBERT COOK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

ADELINA E. HAMILTON, Atty. Reg. #0078595, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}     Defendant-appellant Robert Cook appeals from his conviction and sentence,

following a plea of no contest, for one count of Possession of Heroin. Cook contends that the trial court erred by overruling his motion to suppress evidence that he claims was obtained as the result of an unlawful search and seizure.

{¶ 2} We conclude that the trial court did not err in overruling the motion to suppress. The officers had reasonable articulable suspicion justifying the initial stop. When one of the officers looked inside a bulge in Cook's sock, finding a packet of heroin, he had probable cause to believe that the bulge constituted contraband. Accordingly, the judgment of the trial court is Affirmed.

## I. The Stop, Search and Seizure

{¶ 3} Dayton Police Officers Will Wright and Mark Orick were on separate patrols at 12:30 p.m. one day in October 2011, when they were both dispatched to investigate a suspicious vehicle parked in the median "where they were doing construction" on Interstate 75 near Edwin C. Moses Boulevard. The vehicle was described as a tan or brown Oldsmobile or Buick. The occupants were described as sleeping. As the officers approached the area, dispatch notified them that the vehicle had traveled onto Edwin C. Moses Boulevard and turned onto Arena Park Drive. Both officers arrived at the end of Arena Park Drive; there they observed the described Buick parked in a paved area of a local business where tractor-trailers are loaded.

{¶ 4} The officers left their respective cruisers to approach the vehicle. Officer Wright noticed a male passenger, Cook, seated behind the male driver, reaching down toward the floorboard of the car with his hands obscured. Officer Wright ordered Cook to show his hands. When Cook failed to comply, Wright drew his gun and repeated the order. The order was

repeated again before Cook complied. Officer Orick then removed Cook from the vehicle, and Wright removed the driver.

{¶ 5} Cook did not have on shoes, and only his right foot was covered with a sock. Both men appeared to be lethargic, with droopy eyes and constricted pupils. Officer Orick secured Cook in handcuffs, and proceeded to conduct a pat-down search prior to placing Cook inside a cruiser. As Orick sat and checked Cook's information, he could hear Cook moving his feet underneath the car seat, and felt Cook's legs hitting the back of the seat. Orick ordered Cook to sit still. When Cook did not comply, Orick exited the cruiser and faced the rear driver's side window. He saw Cook leaning over and using his left foot to pull down the sock on his right foot.

{¶ 6} Orick opened the cruiser door and ordered Cook to place both of his feet outside the vehicle. Orick noticed a bulge in the sock on Cook's foot. Orick pulled the sock down and removed a folded piece of paper from it. The paper contained a substance Orick recognized as heroin. The substance was tested and was positive for heroin. Cook was arrested. Once Orick finished running information on Cook, he administered warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## II. The Course of Proceedings

{¶ 7} Cook was indicted on one count of Possession of Heroin, in violation of R.C. 2925.11(A), a felony of the fifth degree. Cook moved to suppress evidence. Following a hearing, the trial court denied the motion. Cook then entered a plea of no contest, and the trial court found him guilty as charged. The trial court sentenced Cook to a term of community

control sanctions not to exceed five years. From his conviction and sentence, Cook appeals.

### III. The Stop, the Search, and the Seizure of the Heroin Were Lawful

{¶ 8} Cook's sole assignment of error states as follows:

THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS MOTION TO SUPPRESS.

{¶ 9} Cook contends that the police had no basis for stopping the vehicle he was in or for seizing his person. He further contends that the police lacked probable cause for a search of his sock, because there was no evidence that the packet containing heroin found therein was subject to plain feel or plain view.

{¶ 10} In deciding a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer,* 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham,* 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005–Ohio–3733, ¶ 8, citing *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 11} We conclude that the trial court's findings of fact, summarized in Part I, above, are supported by the evidence in the record. Accordingly, we turn to the constitutionality of the search and seizure. The Fourth Amendment to the United States Constitution and Article I,

Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. This generally requires that a police officer possess a warrant in order to search an individual. *Arnold v. Cleveland,* 67 Ohio St.3d 35, 45, 616 N.E.2d 163 (1993). However, this protection is not implicated in every situation where police officers have contact with an individual. *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995).

{¶ 12}   A police officer may briefly stop and detain an individual without an arrest warrant or probable cause for an arrest in order to investigate the officer's reasonable suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In order to justify a brief, investigative stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Andrews,* 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), citing *Terry* at 21–22. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *Terry* at 27. The circumstances surrounding the stop must "be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo,* 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988), quoting *United States v. Hall,* 525 F.2d 857, 859 (D.C.Cir.1976).

{¶ 13}   The officers were dispatched to investigate a vehicle, with sleeping occupants, parked in the median of Interstate 75 "where they were doing construction." Enroute, the officers were informed that the vehicle had left the highway and was headed to Edwin C. Moses Boulevard. As the trial court noted, "although the original concern of a traffic hazard had dissipated, the officers were justified to further investigate because it was reported that the occupants of the vehicle were asleep [while parked on the Interstate]." Officer Wright testified

that he was concerned about public safety, given that a driver had been asleep on the Interstate. He was concerned that the driver may have taken medication or had alcohol, causing him to pass out. Wright was also concerned that the driver might have a medical condition that had caused him to pass out.

{¶ 14} The officers followed the vehicle's stated route and located a vehicle matching the description given of the car that had been parked on the interstate. The car was parked in a loading area of a local business, "in the middle of the parking lot where the tractor-trailers would pull in and back into their docking bays." The officers pulled their cruisers up to the car. At this point, the encounter did not constitute a stop. The vehicle was parked. The officers did not have their cruiser lights activated, and there is no evidence that the suspect vehicle was not able to leave the scene. But the incident turned into a stop almost immediately thereafter.

{¶ 15} When the officers got out of their cruisers to approach the vehicle, they noticed Cook in the back seat reaching down toward the floorboard. The officers were unable to see Cook's hands. The officers testified that they were concerned that Cook might have a weapon. Officer Wright had to repeatedly order Cook to show his hands before Cook complied. Officer Wright testified that when Cook refused to comply with the order to show his hands, Wright drew his weapon. Officer Orick testified that when he saw Wright draw his weapon, Orick drew his own weapon. Once the officers drew their weapons and ordered Cook to show his hands, an investigative stop had occurred.

{¶ 16} "Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others." *State v. Rodriguez,* 12th Dist. Preble No. CA2009–09–024,

2010–Ohio–1944, ¶ 28, quoting *State v. Lawson,* 180 Ohio App.3d 516, 2009–Ohio–62, 906 N.E.2d 443, ¶ 21 (2d Dist.). "The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Evans,* 67 Ohio St.3d 405, 422, 618 N.E.2d 162 (1993). "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

{¶ 17} Also, it is well recognized that the need for a protective pat-down is more urgent in situations involving drugs. "The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer." *State v. Thompson,* 1st Dist. Hamilton No. C–050400, 2006–Ohio–4285, ¶ 11. "Recognizing the prevalence of weapons in places where illegal drugs are sold and used * * * an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons." *State v. Oatis,* 12th Dist. Butler No. CA2005–03–074, 2005–Ohio–6038, ¶ 23, citing *State v. Taylor,* 82 Ohio App.3d 434, 612 N.E.2d 728 (2d Dist.1992).

{¶ 18} In this case, both officers are seasoned veterans with regard to drug arrests. Orick testified that he had made between four and five hundred drug-related arrests in his eight years as an officer. Orick further testified that it is common to find weapons during drug-related arrests. Wright testified that he is certified as a drug recognition expert who is "specially trained in advanced testing to determine a person's impairment." He further testified that he had made a "couple hundred" drug arrests during his twenty-eight years as an officer. He also testified that

there are usually weapons involved with drug cases.

{¶ 19}  According to the officers, Cook was removed from the vehicle and handcuffed for officer safety.  Again, the officers noted that Cook had been leaning down in the back seat of the vehicle with his hands concealed.  It took three orders to show his hands before Cook complied.  Cook was then patted down, but nothing was found.  Cook was then placed in Wright's cruiser, because Officer Orick was "maintaining cover on the driver."  Once Cook was in the cruiser, Orick was able to maintain cover while Wright removed the driver and placed him in handcuffs.  The officers had a concern that a weapon had been hidden under the seat of the car.

{¶ 20}  The officers noticed that Cook and the driver appeared droopy-eyed, lethargic and had constricted pupils – a condition that Wright associated with heroin use.  The men's responses were "very slow, [and they were] not very clear-cut in their speech."  Orick testified that even though he does not have Officer Wright's "extensive training," he could tell that "there was something wrong."  We conclude that the officers' actions were reasonable up to this point.  We must next address Cook's claim that the officers had no basis for searching his sock.

{¶ 21}  While *Terry* limits the scope of a search to weapons, contraband discovered during such a search is not automatically inadmissible at trial.  If, under the plain feel or plain view doctrines, it is readily apparent that an object is incriminating in nature, the officer has probable cause to believe the object is related to criminal activity.  *State v. Cobb,* 12th Dist. Butler No. CA2007–06–153, 2008–Ohio–5210, ¶ 30; *State v. Halczyszak,* 25 Ohio St.3d 301, 303, 304, 496 N.E.2d 925 (1986).  "Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against successfully speculative

seizures." *State v. Groves,* 156 Ohio App.3d 205, 2004–Ohio–662, 805 N.E.2d 146, ¶ 42 (2d Dist.). Probable cause requires the officer believe that there is a "fair probability" that the object constitutes "illegal contraband or evidence of a crime." *State v. Jones,* 2d Dist. Montgomery No. 19248, 2002–Ohio–4681, ¶ 10.

**{¶ 22}** While sitting in his cruiser running the information on the driver, Orick noted Cook moving his feet to the left, and could hear him moving his feet underneath the seat. Orick also felt Cook hitting the back of the seat. Orick was seated with one foot out of the cruiser, and was using his mirror to observe Cook while he ran the driver's information. Orick then noted Cook move back to the right, and informed Cook that he should remain still. Cook complied for a moment, then resumed his movements. This movement prompted Orick to exit the cruiser, make "a quick one-eighty," and face the passenger window. He saw Cook "leaning over, but he had his left foot, and was taking his left foot, and * * * was manipulating his [right] sock with his left foot * * * and actually to the point where he was pulling the sock down with his left foot." Cook did not notice Orick observing his actions.

**{¶ 23}** Orick alerted Wright to this behavior. When Wright approached, Orick opened the cruiser door and ordered Cook to "basically pivot and place both his feet outside the cruiser." Orick noted that the sock had a bulge where it would normally lie smooth, so he pulled the sock down and saw "a piece of paper that was in a square-type shape. It had been like folded (indicating) from end to end and I removed that piece of paper from his sock, and I carefully unfolded it and inside was a grayish-brownish like substance * * * that with my numerous drug arrests, I immediately recognized it to be heroin."

**{¶ 24}** Orick removed the paper because he believed it to be "some form of contraband *

\* \* due to the fact that [Cook] was attempting to manipulate it and constantly moving in the rear of my cruiser, there was some interest for him to continue to do that after several warnings to stop moving. And then I observed his movements with my own eyes, then at that point I believed that it was some form of contraband that needed to be removed."

**{¶ 25}** We conclude that Officer Orick had probable cause to seize the package found in Cook's sock. Again, Orick noted Cook moving in the rear of the cruiser, which led him to get out to observe Cook's actions, whereupon he saw Cook attempting to remove the sock with his left foot.

**{¶ 26}** The totality of the facts and circumstances under which the packet containing heroin was discovered supports Officer Orick's conclusion that the item in Cook's sock was contraband. Cook was first observed moving inside the vehicle in a manner consistent with an attempt to conceal something. The officers noted that the men were "on the nod," or lethargic with droopy eyes and constricted pupils, a condition associated with heroin use. Shortly thereafter, while Cook was in the back of the cruiser, he was observed attempting to manipulate his sock with his other foot. All these facts, considered cumulatively, lead us to the conclusion that Orick had probable cause to believe that the bulge in Cook's sock was associated with criminal activity. Orick may not have had probable cause to believe that it was heroin, or that it was any particular kind of contraband, but he did have probable cause to believe that the bulge in Cook's sock was contraband of some sort. Therefore, Orick was entitled to seize the contraband from Cook's sock.

**{¶ 27}** The trial court did not err in overruling Cook's motion to suppress. Cook's sole assignment of error is overruled.

## IV. Conclusion

**{¶ 28}** Cook's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Adelina E. Hamilton
Hon. Dennis J. Adkins